## McGuire, Appellant, *v.* Barnes Safe & Lock Co.

*Negligence—Infant—Boy on wagon—Nonsuit.*

In an action against the owner of a wagon by a boy ten years old, to recover for personal injuries, it appeared that at the time of the accident plaintiff was riding on the wagon standing in a place of safety. The driver turned and cracked his whip towards plaintiff and two other boys who were with him. After the driver had made this demonstration and had turned again towards the horses, plaintiff moved from the place where he had been standing to a place of danger, advancing towards the driver for the purpose of asking him to stop, so that he, the plaintiff, could get off, and taking hold of a standard, which leaned out, he fell off, and was injured. It appeared that the boys were allowed to get on the wagon with the consent of the driver. *Held*, that a nonsuit was properly entered.

Argued Oct. 31, 1906.  Appeals, Nos. 169 and 170, Oct. T., 1906, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., Nov. T., 1904, No. 627, on verdict for defendant in case of John McGuire, a minor, by his next friend and father, Peter McGuire, and Peter McGuire v. Fannie B. Newell, trading as Barnes Safe & Lock Company.  Before Mitchell, C. J., Fell, Brown, Mestrezat, Potter, Elkin and Stewart, JJ.  Affirmed.

Trespass to recover damages for personal injuries.
The court entered a compulsory nonsuit.

Kennedy, P. J., subsequently refused to take off the nonsuit, filing the following opinion :

At the time of the accident, out of which this action arises, the plaintiff, a lad about eleven years of age, was, with two companions of about the same age, riding with consent of the driver, on the dray or wagon of the defendant. This wagon was constructed for the purpose of carrying safes, the body, or carrying part of which was low down, and had along its sides standards or posts, inserted in sockets or holders, at regular intervals along its sides. Towards the rear end of the wagon and on each side were suspended or attached to these standards broad boards extending down along the standards, so as to form partial sides to the wagon. The standards on the middle and front part of the wagon had no boards or

sides to the same, or other protection from falling off the wagon, than the standards themselves.

In the early part of his testimony the plaintiff stated that after they had ridden some distance on the wagon the driver cracked his whip at them, he, the plaintiff, at the time having hold of a standard at the back end of the wagon, and when the whip cracked, the horses started on a gallop, and, with a jerk, the standard of which he had hold, fell out and he fell with it and was injured. This statement he afterwards, however, corrected, and gave in detail the circumstances of the accident, which we must take as true and correct, as follows:

He and his companions were riding on the rear part of the wagon, standing between the boards attached to the standards, described above (which would seem to be a place of complete safety). While thus standing, and after riding some distance (a square and a half, as stated by the plaintiff), the driver, who was riding on an elevated seat in front of the wagon, turned around and cracked his whip towards the boys and said something which he, the plaintiff, did not hear or understand. The horses then started on a gallop, giving a jerk, and the driver then turned towards his horses, watching them. The plaintiff's companions moved towards the rear end of the wagon, but the plaintiff states that, after the driver cracked his whip and the horses started and the driver had turned around to his horses, watching them, he, the plaintiff, left the place where he was standing between these sideboards, above described, and advanced to the second or third standard from where he had been standing, to where there were no sideboards, for the purpose, he states, of asking the driver to stop the wagon until he could get off. He did not, however, ask the question, but took hold or laid his hand on the standard to which he had advanced, which, he said, leaned out a little, and then fell off and was injured, the wagon in the meantime having moved the width of two or three houses. He states that he fell off because the post leaned out. It seems plain that the plaintiff did not get off or fall off the wagon, being impelled to do so through fear of the cracking of the whip by the driver, but that, after the driver had made this demonstration and had turned again towards the horses, the plaintiff moved from a place of safety to a place of danger, advanc-

ing towards the driver for the purpose of asking him to stop, so that he, the plaintiff, could get off the wagon; and taking hold of a standard which leaned out, he fell off and was injured.

Under these circumstances, we are of the opinion that the defendant was not guilty of any negligence which caused the accident and resulting injuries to the plaintiff.

The rule to show cause why the judgment of nonsuit should not be taken off is discharged.

*Error assigned* was the order of the court.

*R. P. Tannehill,* with him *Thomas M. & Rody P. Marshall,* for appellants.—There was ample testimony to go to the jury that the appellee's driver struck at John McGuire with his whip and ordered him off his wagon, and that his falling was directly connected with and caused by the negligent or malicious actions of the driver : Enright v. Pittsburg Junction R. R. Co., 198 Pa. 166 ; Brennan v. Merchant, 205 Pa. 258 ; Rachmel v. Clark, 205 Pa. 314 ; Ely v. Pittsburg, etc., Ry. Co., 158 Pa. 233 ; Glase v. Philadelphia, 169 Pa. 488.

*H. S. McKinley* and *Charles W. Jones,* for appellee, were not heard.

PER CURIAM, January 7, 1907 :
Judgment affirmed on the opinion of the learned judge below.